UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DAVID NICHOLAS,

                                        Petitioner,

   v.                                                                   9:19-CV-322
                                                                                 (GLS/ATB)

TIMOTHY McCARTHY, Superintendent,

                                        Respondent.

---

DAVID NICHOLAS, Petitioner pro se
JAMES FOSTER GIBBONS, Asst. Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

**I.   Background**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1988 judgment of conviction in Onondaga County, upon a jury verdict, of two counts of first degree attempted murder, two counts of attempted aggravated assault upon a police officer, three counts of fourth degree criminal possession of stolen property, two counts of fifth degree criminal possession of stolen property, criminal possession of a weapon, and reckless driving. (Petition ("Pet.") at 1-2; *People v. Nicholas*, 163 A.D.2d 844 (4th Dep't 1990)) (*See* Dkt. No. 1-1 at 2-3.1). The Appellate Division, Fourth Department, affirmed the judgment, and on November 2, 1990, the New York Court of Appeals denied leave to appeal. (Pet. at 2-3; *Nicholas*, 163 A.D.2d at 845, *lv. denied*, 76 N.Y.2d 989 (1990)).

On March 15, 2017, petitioner filed a motion to vacate his judgment pursuant to New York Criminal Procedure Law § 440.10. (Pet. at 3-4). The motion was denied on September 28, 2017. (*Id.* at 4; Dkt. No. 1-1 at 5-13). The Appellate Division denied petitioner's motion for leave to appeal on March 13, 2018. (Pet. at 4-5; Dkt. No. 1-1 at 15-16). On April 30, 2018, petitioner filed a motion for reconsideration with the Appellate Division. (Pet. at 5-7). The Appellate Division denied the motion on July 27, 2018. (Id. at 7; Dkt. No. 1-1 at 17-18). On August 25, 2018, petitioner filed "a motion to address an 'abuse of discretion'" in the Court of Appeals. (Pet. at 8). The Court of Appeals denied the motion on October 19, 2018. (*Id.*; Dkt. No. 1-1 at 19). *See People v. Nicholas*, 32 N.Y.3d 1067 (2018). Petitioner filed a motion for reconsideration. (Pet. at 8-9). The motion was denied on January 11, 2019. (Pet. at 9; Dkt. No. 1-1 at 20). *See People v. Nicholas*, 32 N.Y.3d 1176 (2019). Petitioner mailed this federal petition for habeas corpus on March 11, 2019. (Pet. at 14).

## II. <u>Grounds Asserted in Habeas Corpus Petition</u>

Petitioner raises the following grounds for relief:

(1) He was subjected to prosecutorial misconduct when "representatives of the state knowingly falsified physical evidence . . . , information and testimony relevant to the crimes of attempted murder. . . and attempted aggravated assault" (Pet. at 10-11);

(2) Petitioner's trial counsel was ineffective. (Pet. at 11-12);

(3) The trial court erred in its "unreasonable determination of the facts and incorrect interpretation/application of the CPL § 440 statute"[1] (Pet. at

---

[1] Petitioner claims that the trial judge erred in his section 440.10 decision when he determined that petitioner's prosecutorial misconduct and his ineffective counsel claim were procedurally barred. (Pet. at 12-13).

2

12-14).

Respondent argues for denial of the petition, based primarily on the expiration of the statute of limitations. (Resp. Mem.) (Dkt. No. 16-1). Petitioner has filed a traverse. (Dkt. No. 20).

### III. Statute of Limitations

#### A. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254

> unless the adjudication . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The AEDPA established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. *Id.* § 2244(d)(1)(A). If a direct appeal is filed, the judgment of conviction becomes final ninety days after the date that the New York Court of Appeals denies leave to appeal.[2] *Williams v. Artuz*, 237 F.3d 147,

---

[2] The ninety-day time period is the time that a petitioner would have to seek direct review of his conviction in the United States Supreme Court and must be counted for purposes of the AEDPA statute of limitations. *Williams v. Artuz*, 237 F.3d at 150–51 (discussing the statutory

3

150–51 (2d Cir. 2001).

Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed; the date on which the constitutional right on which petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized *and* made retroactively applicable; or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B), (C), and (D). In *Duncan v. Walker*, 533 U.S. 167, 179 (2001), the Supreme Court stated that this statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review."

The AEDPA provides that the one year limitations period will be tolled while a "properly filed" state court post-conviction motion is pending. 28 U.S.C. § 2244(d)(2). The tolling provision only applies if the post-conviction motion was "properly filed" and if it was pending within the one-year limitations period. *Smith v. McGinnis*, 208 F.2d 13, 16 (2d Cir. 2000). Simply filing a post-conviction motion does not re-start the limitations period, and it excludes from the limitations period only the time that the motion remained undecided, including the time during which an appeal from the denial of the motion was taken. *See Bennett v. Artuz*, 199 F.3d 116, 120–21 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000).

---

requirement that the statute of limitations begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review") (citing 28 U.S.C. § 2244(d)(1)(A)).

Although the AEDPA does not provide that the statute of limitations may be tolled for any reasons other than the pendency of a state post-conviction motion, in "extraordinary circumstances," the court may equitably toll the limitations period. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In order to warrant equitable tolling, petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The Second Circuit has also determined that courts should consider a claim of "actual innocence" as a basis for excusing late filing under the AEDPA. *See Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012).

### B.     Application

In this case, the jury found petitioner guilty on June 2, 1988, and he was sentenced on October 4, 1988. The Appellate Division, Fourth Department affirmed petitioner's conviction on July 13, 1990, and the New York Court of Appeals denied leave to appeal on November 2, 1990. *People v. Nicholas*, 163 A.D.2d 844 (4th Dep't 1990), *lv. denied*, 76 N.Y.2d 989 (1990). There is no question that petitioner's judgment of conviction became final on January 31, 1991, when the 90-day period to seek certiorari in the United States Supreme Court expired.

The AEDPA became effective on April 24, 1996. *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998) (citing Pub. L. No. 104–132, 110 Stat. 1214). In *Ross*, the court held that when a petitioner's conviction became final before the effective date of the AEDPA, he would have one year from the effective date of the statute within which to

file his habeas petition. *Id.* at 103. Thus, petitioner in this case, whose conviction became final on January 31, 1991, would have had until April 24, 1997 within which to file a habeas petition in federal court. This petition was mailed on March 11, 2019 and is clearly untimely. However, the court must also consider whether the statute of limitations was either statutorily or equitably tolled.

### 1.     Statutory Tolling

As stated above, the statute provides that the one year limitations period will be tolled while a "properly filed" state court post-conviction motion is pending. 28 U.S.C. § 2244(d)(2). However, the post-conviction motion must be "properly filed" and it must have been pending ***within the one-year limitations period***. *Smith v. McGinnis*, *supra.* In this case, petitioner would have had to file a post-conviction motion prior to April 24, 1997 in order to take advantage of the statutory tolling provision of the AEDPA. Simply filing a post-conviction motion does not "restart" the statute of limitations. *Bennett v. Artuz, supra.*

Petitioner signed his section 440.10 motion to vacate on March 11, 2017,[3] almost 20 years after his statute of limitations expired. Filing a section 440.10 motion did not restart the statute of limitations. Petitioner attempts to argue that he is challenging the trial court's handling of his section 440.10 motion, and therefore, his habeas petition is timely because all the appeals associated with that motion were not concluded until

---

[3] Respondent and the court are giving petitioner the benefit of the prison "mailbox" rule and using the date that he signed his papers as the date of filing. *See Houston v. Lack*, 487 U.S. 266 (1988) (under the prison mailbox rule, petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing). When it is unclear when the petitioner actually mailed the application, the court gives the petitioner the benefit of the doubt and assumes that the date coincides with the day that he signed the document.

January of 2019. Petitioner's argument is unavailing. It is clear from his section 440.10 motion and this petition, that he is still challenging his judgment of conviction, even though he claims that the trial court mishandled his section 440.10 motion. Thus, petitioner cannot take advantage of statutory tolling.

### 2. Equitable Tolling

Plaintiff argues that he did not get a copy of his file until March of 2015. (Dkt. No. 8). Plaintiff goes into great detail about how diligent he was after receiving his file during the time between 2015 and when he filed his section 440.10 motion in 2017. (Dkt. No. 8 at ¶¶ 18-35). Plaintiff's problems included illness and limited access to the law library. (*Id.*) Plaintiff has attached letters that he wrote to his attorney and the responses that he received in an attempt to obtain the "defense file." (Dkt. No. 8-1 - Exhibits). His first letter to counsel is dated March 10, 2014 and states that "years back," Attorney Thomas Ryan quoted petitioner $300 for the file, but that petitioner did not have the funds. (Dkt. No. 8-1 at Ex. A). Petitioner then stated that he was still indigent, but would appreciate it if counsel would send the file. (*Id.*) Although petitioner's counsel initially thought that the file could have been destroyed in a flood, he ultimately located the file and sent it to the petitioner. (*Id.* Exs. B-E). There were some documents that appeared to have taken petitioner a little longer to obtain.

While the petitioner appears to claim that he exercised due diligence in getting the materials necessary to file this habeas petition, he has not indicated why he waited approximately *17 years* to attempt to obtain his file. Even if, as he says in his 2014 letter to Attorney Ryan, he asked for his file "years back," there is no date for this initial

7

request, and still no justification for petitioner's delay.[4] Petitioner cannot blame his ill health for a 17-year delay.[5] Petitioner has asserted no "extraordinary circumstances" that stood in his way. Lack of funds, lack of access to the law library, and unfamiliarity with legal issues are impediments shared by most pro se habeas corpus applicants and do not warrant equitable tolling. *See Cruz v. Noeth*, No. 6:17-CV-6549, 2018 WL 5809948, at *3 (W.D.N.Y. Nov. 6, 2018) (citations omitted) (routine experiences of prison life, including restricted access to the law library and difficulties obtaining materials and transcripts do not qualify as "extraordinary circumstances," warranting equitable tolling).

Petitioner is not claiming "actual innocence" or that he has discovered "new evidence" in his case. In fact, his letter to counsel in 2014 began by stating that it was "over 25 years since my ***ill chosen act***."[6] (Dkt. No. 8-1, Ex. A) (emphasis added). He

---

[4] In fact, petitioner mentions this in his Traverse, but he still fails to establish when he first asked counsel for the file. (Traverse ¶ 19).

[5] In his letter, petitioner told counsel that he had been diagnosed with COPD (Chronic Obstructive Pulmonary Disease). In his Traverse, petitioner now states that he is not blaming his ill health for any delay. (Traverse ¶ 19(B)).

[6] Petitioner's conviction arose out of an incident in which two New York State Troopers had located an automobile that defendant was suspected of stealing. 163 A.D.2d 844. The officers determined that the car contained items that were taken as the result of residential burglaries. *Id.* They conducted a stake-out of the car and saw petitioner get in the car and drive away. The pursuit of petitioner resulted in a high speed chase, which ended when petitioner crashed the car into a utility pole. *Id.* Petitioner then got out of the car and began shooting in the direction of the Troopers' car, but surrendered after he ran out of bullets. *Id.* "One shot struck and shattered the vehicle's windshield, one hit the car's right front fender, and four hit the open passenger door through which a Trooper was exiting. Neither Trooper was hit by the gunshots." *Id.* Petitioner admitted shooting at the Troopers, but denied intending to kill them. *Id.* Petitioner's current claims appear to focus on the Troopers' "falsifying physical evidence," resulting in alleged inaccuracy in their testimony about the cause and extent of their injuries and petitioner's counsel's alleged ineffectiveness. Although petitioner did not raise these issues until his section 440.10 motion, all the facts relative to the claims were available at the time of the trial. The fact that petitioner "developed" these arguments after reviewing the "defense

ended his letter stating that "maybe something in the file that will help me in my quest for freedom." (*Id.*)  The Supreme Court has held that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995) and citing *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met)).

Petitioner in this case claims no "new" evidence.  He bases both of his claims on evidence that was present at the time of the trial.  He alleges one of the Troopers testified falsely that he was struck in the fact with "silver bullet shavings" instead of "windshield glass," and that the prosecutor presented false evidence of one of the Trooper's proximity to the gunshots to enhance his legal argument of "close proximity." (Dkt. No. 1-1 at 8) (*People v. Nicholas*, No. 1987-2370 (Sup. Ct. Onon. Cty. Sept. 28, 2017) (Judge John Brunetti's Section 440.10 decision at 4).  Petitioner does not deny shooting at the Troopers, and notwithstanding petitioner's claims of "falsified evidence" or "prosecutorial misconduct," the issue was whether the jury believed that petitioner was trying to kill the officers.  Plaintiff's ineffective assistance of counsel claim is also based on facts that existed at the time of the trial, whether "on the record" or not.  Thus, he cannot claim "actual innocence" as it is defined by the Supreme Court.  Because petitioner has failed to establish any basis for equitable

---

file" does not excuse the delay in presenting them either to the section 440.10 court or in a federal habeas petition.

9

tolling or any claim of actual innocence, his habeas petition must be dismissed based on the expiration of the statute of limitations.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: April 17, 2020

Hon. Andrew T. Baxter
U.S. Magistrate Judge